1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE HON. RICHARD JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,            )
                                      )    CASE NO. CR18-131 RAJ
        Plaintiff,                    )
                                      )
        v.                            )    MOTION FOR RECONSIDERATION
                                      )
LAMONT JEFFREY REYNOLDS,              )    **Note on Motion Calendar:**
                                      )    **June 22, 2020**
        Defendant.                    )
                                      )
                                      )
                                      )
                                      )
                                      )

COMES NOW Lamont Reynolds, the defendant, by and through his attorney, Neil M.

Fox, and asks for reconsideration of the Order on Defendant's Motion for Compassionate

Release, Dkt. 1327, issued on June 17, 2020.

        **1.    *Introduction***

        Imprisoned at FCI Lompoc, an epicenter of the COVID-19 pandemic, Mr. Reynolds

sought compassionate release under 18 U.S.C. § 3582(c)(1)(A).  In its June 17th ruling, the

Court denied the motion in part based on the conclusion that Mr. Reynolds has received

"extensive care, treatment, and testing of Mr. Reynolds' medical conditions" and that his

"confirmed case of COVID-19 was resolved."  Dkt. 1327 at 6.  The Court further noted, "His

last medical report indicates that he is currently receiving medication for his other health

concerns and is not suffering from any reported lingering symptoms from COVID-19."  *Id*. at

MOTION FOR RECONSIDERATION - Page 1
*United States v. Cheatham et al.*, No. CR18-131 RAJ

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

7.  The Court also stated: "Mr. Reynolds filed a Supplemental Memorandum and incorrectly represented that the Bureau of Prisons stopped providing medical care after May 21, 2020, and ignored a request to provide medical treatment for his chronic and acute medical problems." *Id*. at 3.

In fact, Mr. Reynolds has not received appropriate medical care; he suffers the lingering effects of COVID-19; BOP stopped regular medical care after May 21st and likely only examined him on June 9th because of this Court's order; and Mr. Reynolds is still at risk.

**2.    *Standard for Reconsideration***

Pursuant to Local CrR 12(b)(13)(A), the Court will ordinarily deny a motion for reconsideration "in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."  The motion must "point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling."  Local CrR 12(b)(13)(B).

**3.    *Manifest error and Misapprehended Matters***

The Court's ruling is predicated on the conclusion that Mr. Reynolds "recovered" from COVID-19, that BOP is treating his underlying chronic conditions, and that Mr. Reynolds incorrectly argued that BOP had stopped providing him with medical care on May 21, 2020. However, a review of the record confirms Mr. Reynolds' position.

On June 2, 2020, the Court ordered the Government to "provide to this Court by June 11, 2020, a report on Mr. Reynolds's current medical condition, any COVID-19 symptoms he is currently suffering, any treatment that he has sought, and the treatment provided."  Dkt. 1316 at 3.  On June 4, 2020, the Government provided the undersigned counsel with ten pages of Mr. Reynolds' medical records (filed under seal as Exhibit 1), records that supplemented those provided by the Government in early May (Dkt. 1297, Ex. A).  The records provided on June 4th stopped at May 21, 2020, when Mr. Reynolds' temperature was taken (apparently by a dentist) and Reynolds complained about his symptoms: "Inmate screened for COVID-19 symptoms. Inmate denies cough, SOB, sore throat, HA, loss of taste and smell, and/or chills.

**Law Office of Neil Fox, PLLC
2125 Western Ave., Suite 330
Seattle, Washington 98121
206-728-5440**

*Patient complains of muscle pain.*" Ex. 1 at 2 (emphasis added).  A few days before, on May

15, 2020, Mr. Reynolds had complained about shortness of breath: "New Reported

Symptoms: *Short of Breath.*"  Ex. 1 at 2 (emphasis added).

As noted, the records provided to counsel on June 4th stopped at May 21, 2020.[1]  In

other words, despite Mr. Reynolds' continued illness, BOP did not provide any follow up

medical care.  Moreover, despite the fact that counsel informed BOP's lawyer, Mr. Dennis

Wong, on May 14, 2020, that an independent review of the prior BOP records by Dr.

Alexander Schafir revealed that Mr. Reynolds had several chronic health conditions that were

not being treated (a prior heart attack, kidney and liver disease, excessive post-incarceration

weight gain, possible sleep apnea), Dkt. 1317 Ex. 1,[2] nothing in the records provided on June

4th revealed that BOP had done anything to address those problems.  Indeed, the records

provided on June 4th were notable in they did not even contain mention of Dr. Schafir's

findings about Reynolds' health conditions.

On June 9, 2020, the undersigned counsel was able to have a brief legal call with Mr.

Reynolds. Counsel learned that likely as a result of this Court's order of June 2nd, BOP

medical staff had examined Mr. Reynolds that morning, an examination that counsel

specifically referenced in his later supplemental pleading filed very late on June 10, 2020.

Dkt. 1317 at 2.  Attached to the supplemental memo, Mr. Reynolds provided the Court with

declarations from three doctors: (1) a supplemental declaration from Dr. Schafir noting the

type of treatment that he would provide to Mr. Reynolds if he was his patient, which would

include taking new blood samples to check on Reynolds' liver and kidney disease and

cholesterol levels, ordering an ultrasound and conducting a sleep apnea test. Dr. Schafir also

---

[1]       There is an entry on May 30, 2020, that someone made claiming that the confirmed case
of COVID-19 had "resolved," but this was not made after provision of any treatment or examination of
Mr. Reynolds. Ex. 1 at 5.

[2]       Counsel had provided Mr. Wong with Reynolds' reply memo which attached the
Declaration of Dr. Alexander Schafir, Dkt. 1301 at 18-21 (Ex. 1), who for the first time was able to
review BOP's medical records and who identified multiple chronic health concerns, gleaned from the
BOP medical records but which were not being properly treated by BOP (i.e. liver and kidney disease,
history of heart attack, morbid obesity, possible sleep apnea).

MOTION FOR RECONSIDERATION - Page 3
*United States v. Cheatham et al.*, No. CR18-131 RAJ

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1   revised his prior opinion about morbid obesity and risk levels (Dkt. 1317, Ex. 3); (2) a

2   supplemental declaration from Dr. Shamsher Samra of UCLA that discussed how Mr.

3   Reynolds' conditions (liver and kidney disease, coronary disease, obesity, possible sleep

4   apnea) were risk factors for someone who was suffering COVID-19.  Dr. Samra also

5   discussed the possible risk of reinfection for COVID-19 (Dkt. 1317, Ex. 4); and (3) a

6   declaration from Dr. Joshua Schiffer from the Fred Hutchinson Center about the unknown

7   long-term effects of COVID-19. Dkt. 1317, Ex. 5.

8          Because when counsel filed his supplemental memo late on June 10th, counsel had not

9   yet seen any medical records from the June 9th exam, and because BOP's counsel, Mr. Wong

10  had refused to provide him with updates about Mr. Reynolds' medical conditions, Dkt. 1317,

11  Ex. 1, counsel noted that any new information from the June 9th contact should be evaluated

12  by outside medical experts.  Dkt. 1317 at 4.  Counsel further asked that the Court order BOP

13  to take Mr. Reynolds off-site "to an outside medical facility where he can properly be given

14  standard medical tests to be able to determine his true medical condition." *Id*.

15         After Mr. Reynolds filed his supplemental materials, the Government filed its pleading

16  late in the day of June 11, 2020, with a letter from a doctor who has never examined Mr.

17  Reynolds (Dr. Pelton) who confirmed that Mr. Reynolds had Stage 2 kidney disease, but

18  appeared to shift the blame to Mr. Reynolds for "poor compliance" with his hypertension

19  medication, ignoring Reynolds' complaints about the dizziness the medication caused. Dkt.

20  1319, Ex. 1. The Government also filed new medical records that contain the notes from the

21  June 9th medical contact and the results of an EKG.  Dkt. 1319, Amended Ex. 2.

22         At the outset, the new records (which had not previously been disclosed to counsel)

23  confirmed what counsel reported in his supplemental memo – that BOP's medical staff finally

24  had contact with Mr. Reynolds on June 9th.  Even these records showed that Mr. Reynolds

25  complained about continuing pain: "*COVID+ inmate with related body aches x weeks;*

26  *explained duration of residual COVID symptoms*. Inmate understands. Will Rx Tylenol."

27  Dkt. 1319, Amended Ex. 2 at 23 (emphasis added).  This evidence is contrary to the Court's

28  conclusion Mr. Reynolds "is not suffering from any reported lingering symptoms from

    COVID-19." Dkt. 1327 at 7.

MOTION FOR RECONSIDERATION - Page 4
*United States v. Cheatham et al.*, No. CR18-131 RAJ

More importantly, the records that the Government provided late on June 11th reveal that BOP is not treating or otherwise monitoring Mr. Reynolds' liver and kidney disease, morbid obesity, possible sleep apnea and heart disease (other than taking an EKG).  There were no additional blood tests taken; no scans ordered; no sleep studies ordered. An EKG was administered and nothing more.  The last blood work done on Mr. Reynolds remains that which was done in October 2019.  Dkt. 1297, Ex. A at 99-100. In other words, despite Mr. Reynolds' medical condition and despite the fact that he became sick with COVID-19 in a very unhealthy environment, characterized by poor sanitation and widespread illness, BOP has provided him with substandard medical care – not doing the types of things that Dr. Schafir would normally do if Reynolds was his patient in a clinic in the community.

Again, despite the fact that Mr. Reynolds' provided Dr. Schafir's report to BOP's counsel in May, there is no indication that BOP acted that information. Despite the fact that Mr. Reynolds' complained about his symptoms on May 21, 2020, BOP stopped regular medical attention and apparently only saw Mr. Reynolds on June 9th because of this Court's order of June 2nd, but still has done nothing to address Mr. Reynolds' chronic medical problems.  Finally, BOP is not monitoring Mr. Reynolds' current situation in light of the documented risks to his health caused by having underlying chronic medical conditions in conjunction with a positive diagnosis for COVID-19 as explained by Dr. Samra.

This Court's order denying compassionate release contains manifest error and misapprehends Mr. Reynolds' medical situation and BOP's failure to provide him with adequate medical care.  The Court should change its order of June 17, make it clear that BOP stopped providing Mr. Reynolds regular medical care after May 21st and that its exam of Mr. Reynolds on June 9th (likely a result of the June 2nd order) failed to address Mr. Reynolds' chronic conditions.  The Court should then grant the motion for compassionate release.

DATED this 22nd day of June 2020.

Respectfully submitted,

s/ Neil M. Fox
Attorney for Defendant

MOTION FOR RECONSIDERATION - Page 5
*United States v. Cheatham et al.*, No. CR18-131 RAJ

**Law Office of Neil Fox, PLLC
2125 Western Ave., Suite 330
Seattle, Washington 98121
206-728-5440**

CERTIFICATE OF SERVICE

        I hereby certify that on the 22nd day of June 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorney of record for the Plaintiff and all other parties.


                    s/ Neil M. Fox
                    Attorney for Defendant

MOTION FOR RECONSIDERATION - Page 6
*United States v. Cheatham et al.*, No. CR18-131 RAJ

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**