The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO.  2:18-cr-00131-RAJ |
| Plaintiff | |
| v. | ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION |
| LAMONT JEFFREY REYNOLDS, | |
| Defendant. | |

This matter comes before the Court upon Defendant Lamont Jeffrey Reynolds'
Motion for Reconsideration.  Dkt. 1331.  Having thoroughly considered the parties'
briefing and relevant record, the Court finds oral argument unnecessary and hereby
**GRANTS** Mr. Reynolds' motion for the reasons stated herein.

### I. BACKGROUND

Mr. Reynolds filed a Motion for Compassionate Release that was denied by order
dated June 17, 2020.  Dkt. 1327.  Mr. Reynolds has filed a motion seeking
reconsideration of that order, contending the Court committed manifest error in its
conclusion that Mr. Reynolds' COVID-19 had resolved and that he was receiving
treatment for his chronic conditions.

ORDER - 1

## II. DISCUSSION

### A.    Legal Standard for Motions for Reconsideration

At the outset, CrR 12(b)(13)(A) and (B) plainly articulate the standard for motions for reconsideration:

> (A) Standards. Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable  diligence.

> (B)…the motion shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the modifications being sought in the court's prior ruling.

### B.    No Manifest Error Was Committed

The Court begins this analysis considering whether the Court committed manifest error in its prior ruling.  The Court concludes no error was committed in the ruling in the prior order.  The prior determination was premised upon the evidence submitted for the Court's consideration.  The Court relied upon the medical records of Mr. Reynolds supplied by the government.  Mr. Reynolds presented no medical evidence to the contrary.  Those records confirmed that despite Mr. Reynolds' positive COVID-19 test, he had received a "resolved" diagnosis from his treating physicians.  Moreover, the only other medical evidence submitted at the time of the Court's order was a medical report indicating that he was not suffering from any reported lingering symptoms from COVID-19.

Mr. Reynolds is now in no position to contend the Court committed manifest error in reaching a decision based upon the record and limited medical evidence submitted for the Court's consideration.   Consequently, the Court denies Mr. Reynolds' motion on this ground.

///

1

### C.     New Facts or Legal Authority

2         The Court next turns to whether Mr. Reynolds has made a showing of new facts

3   or legal authority which could not have been brought to the Court's attention with

4   reasonable diligence.

5         Since the Court's prior order, several significant developments have occurred that

6   warrant a conclusion that new facts exist which were previously unknown and thus were

7   unavailable to Mr. Reynolds and certainly not this Court.

8         First, since the issuance of the Court's prior order denying release, the

9   government has drastically modified its position and now admits that Mr. Reynolds'

10   stage 2 kidney disease is a medical condition recognized by the Centers for Disease

11   Control and Prevention (CDC) in its June 25, 2020 update as one of the conditions that

12   renders people at an increased risk of severe illness from COVID-19.  As such, the

13   government no longer disputes that Mr. Reynolds' stage 2 kidney disease in the context

14   of COVID-19 presents an "extraordinary and compelling reason" that allows the Court

15   to exercise its discretion to consider whether a reduction in sentence is warranted.

16   Dkt. 1343.

17         In light of this modification, the government has reduced its opposition to Mr.

18   Reynolds' release to him being a danger to the community and that his release would be

19   inconsistent with the factors set forth in 18 U.S.C. § 3553(a).  The government

20   incorrectly suggests the Court denied Mr. Reynolds' original motion for compassionate

21   release based upon the issue of safety of the community or analysis under 18 U.S.C.

22   § 3553(a).  The only reason articulated by the Court in denying the motion was because

23   of the information about his medical condition which indicated his issues related to

24   COVID-19 had resolved.  Dkt. 1327.

25         Second, since the last order of this Court, Mr. Reynolds has submitted medical

26   records reviewed by an independent physician, Dr. Alexander Schafir.  His report

27   concluded that Mr. Reynolds had either stage 2 or stage 3 chronic kidney disease based

28   upon March 29, 2019, labs.  Dkt. 1301 at 20 (Ex.1).  Despite having these lab results,

1    there is no evidence in the record that the Bureau of Prisons (BOP) has undertaken any

2    effort to address this serious medical condition for the past 16 months, a condition

3    recognized by the CDC that renders people at an increased risk of severe illness from

4    COVID-19.

5           The Court is equally concerned that the BOP apparently was not providing

6    adequate treatment for Mr. Reynolds even after Dr. Schafir's independent review of his

7    medical records revealed that he had several chronic health conditions including a

8    documented history of heart disease including a prior heart attack, kidney and liver

9    disease, hypertension, excessive post-incarceration weight gain, and possible sleep

10   apnea.  Dkt. 1317, Ex. 1.

11          It is also uncontradicted that the BOP is providing limited treatment or otherwise

12   monitoring Mr. Reynolds' liver and kidney disease, which serves as a significant reason

13   for this Court's final determination.  The last blood work done on Mr. Reynolds is that

14   which was done in October 2019.  Dkt. 1297, Ex. A at 99-100.  BOP's physician, Dr.

15   Dhaliwal, apparently noted the October 2019 creatinine level (Dkt. 1345) but neither he

16   or any other physician took new blood samples to determine Mr. Reynolds' current level

17   of renal failure.

18           Mr. Reynolds has already been diagnosed with having had COVID-19.  He has a

19   liver and kidney disease which the CDC has confirmed puts him at severe risk for

20   COVID-19 complications.  It is also a matter of record that the CDC's guidance

21   indicates that it does not know whether people who recover from COVID-19 can

22   become infected again.  Dkt. 1343 at 3 n.1.

23          The medical records submitted by the government do not convince this Court that

24   the BOP is treating or otherwise monitoring Mr. Reynolds' liver and kidney disease.  An

25   EKG was performed, but the type of care and treatment noted by Mr. Reynolds' medical

26   expert convinces this Court that Mr. Reynolds' medical risks may be grave if he remains

27   in BOP custody in the absence of proper care and treatment, particularly after he has

28   already contracted COVID-19.

ORDER - 4

1    The Court appreciates that the BOP may currently be overwhelmed with the
2  current extraordinary demands of the pandemic, but this is no reason to punish Mr.
3  Reynolds to health conditions that exceed the notions of punishment considered at the
4  time of his sentencing.

5    Therefore, the Court finds that Mr. Reynolds' COVID-19 diagnosis, stage 2
6  kidney disease, and other medical conditions described in the records, combined with
7  the concessions of the government, constitute new facts which could not have been
8  brought to the Court's attention with reasonable diligence.  Together these
9  circumstances constitute a serious medical condition that constitutes an extraordinary
10  and compelling circumstance warranting compassionate release under the United States
11  Sentencing Guidelines.

### D.    Danger to the Community

12
13
14    The Court next turns to whether Mr. Reynolds presents a danger to the safety of
15  any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this
16  determination, the Court looks to the nature and circumstances of the underlying offense,
17  the weight of evidence against him, his history and characteristics, and the nature and
18  seriousness of the danger his release would pose to any person or the community.  18
19  U.S.C. § 3142(g).

20    Mr. Reynolds' underlying criminal conduct was serious and supported by
21  substantial evidence.  He was heard on a wiretap taking directions from the leader of the
22  drug operation to obtain and sell various illegal and dangerous drugs, including crack
23  cocaine, heroin, and large quantities of marijuana.  During the execution of a search
24  warrant at his residence, law enforcement officers located weapons tied directly to Mr.
25  Reynolds, *e.g.*, a Glock 9mm and Glock .40 caliber pistol.  There is no evidence from the
26  investigation or wiretap that Mr. Reynolds utilized these weapons in conjunction with
27  drug trafficking other than their possession at his residence.

28

ORDER - 5

1    In that same residence officers recovered $305,335 in U.S. currency, scales, and a

2 cash counter.  For sentencing purposes, Mr. Reynolds admitted he personally distributed

3 and/or that others foreseeably distributed and/or possessed with intent to distribute, 1,014

4 kilograms of converted drug weight of the drugs noted above.  Dkt. 955, PSR ¶'s 52-55.

5    The record also indicates that despite Mr. Reynolds' confirmed role in the

6 conspiracy, his actual role was limited to the months between November 2017 and

7 February 2018 when he was picking up and delivering drugs at the direction of his co-

8 defendant.  Dkt. 737 at 7.

9    Mr. Reynolds' criminal history reflects no felony criminal convictions since his

10 Identity Theft conviction in 2004, and his only other felony conviction was unlawful

11 possession of a firearm in 1997, more than 20 years ago.  Dkt. 955, ¶'s 71-75.

12    The Court has considered that Mr. Reynolds was detained pretrial.  U. S. Pretrial

13 Services, however, had recommended his release prior to trial with a plan of Mr.

14 Reynolds residing at his sister's home in Tacoma.  While that plan has been placed on

15 hold, U.S. Probation has approved him living with his niece in University Place until Mr.

16 Reynolds' sister can obtain her own apartment.  This documents that U.S. Probation has

17 confirmed that Mr. Reynolds can be supervised in the community and live with his niece.

18    The government contends that Mr. Reynolds is a danger to the community and

19 premises the thrust of this contention on evidence of domestic violence at the time of Mr.

20 Reynolds' arrest.  It appears from the records provided by the defense that the

21 government's conclusion of possible domestic violence is contradicted by the police

22 investigation where they concluded: "*After speaking with all parties inside the home, it*

23 *was determined that no physical altercation took place nor was anybody assaulted in any*

24 *way.*"  Dkt. 577 at 13 (Ex. 1).

25    As discussed above, the government's concession on the extraordinary and

26 compelling issue has reduced this Court's analysis to whether Mr. Reynolds is a danger

27 to the community.  The Court concludes that he is not.  He has served 18 months of his

28 original sentence and has demonstrated that extraordinary and compelling reasons exist

1  due to the combination of the COVID-19 pandemic and his extraordinary combination of

2  health conditions which warrant compassionate release.

3                                    **III.  CONCLUSION**

4

5          For the foregoing reasons, Mr. Reynolds' motion for reconsideration is

6  **GRANTED**.  The Court hereby **ORDERS** that Mr. Reynolds' term of imprisonment be

7  reduced to time served.  The Court **ORDERS** the Bureau of Prisons to release Mr.

8  Reynolds no later than 72 hours after entry of this order for placement according to the

9  release plan approved by the United States Probation Office where he will be supervised.

10 Mr. Reynolds is **ORDERED** to contact the United States Probation Office within 24

11 hours of his release and follow its instructions**.**

12         The Court further ORDERS that in the interest of protecting the community, Mr.

13 Reynolds shall remain in quarantine for fourteen days to ensure that he has not re-

14 contracted the virus, especially since he will be traveling from a state and a BOP facility

15 where COVID-19 is surging.

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

ORDER - 7

1      The Court further **ORDERS** that as an additional condition of supervised release,

2  Mr. Reynolds shall serve the first 24 months of his four-year term of supervised release in

3  home confinement subject to the standard and special conditions of the original term of

4  supervised release.  Mr. Reynolds shall participate in the location monitoring program

5  with Active Global Positioning Satellite technology for the 24-month period.  Mr.

6  Reynolds is restricted to his residence at all times except for employment, religious

7  services, medical, legal reasons, or as otherwise approved by the location monitoring

8  specialist.  Mr. Reynolds shall abide by all program requirements, and must contribute

9  towards the costs of the services, to the extent financially able, as determined by the

10  location monitoring specialist.

11      DATED this 23rd day of July 2020.

12

13                 _Richard A Jones_

14                 The Honorable Richard A. Jones

15                 United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 8